ROBERT B. WYNESS & another *vs.* LILLIAN I. CROWLEY.
LILLIAN I. CROWLEY *vs.* ROBERT B. WYNESS & another.

Norfolk.    October 8, 1935. — November 25, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Probate Court*, Adoption, Jurisdiction.    *Adoption.*

The Probate Court had authority under G. L. (Ter. Ed.) c. 210, to enter a decree of adoption of a child under fourteen years of age on a petition on which the consent of the mother of the child to the adoption was written voluntarily with full understanding of all the facts (the father being of parts unknown and not having appeared after notice), though the mother attempted to withdraw her consent before the hearing on the petition.

Two PETITIONS, filed in the Probate Court for the county of Norfolk on July 12, 1933, and August 16, 1934.

The petitions were heard by *McCoole*, J. Lillian I. Crowley appealed from decrees entered by his order.

*O. Storer*, (*K. G. Baker* with him,) for Crowley.

*G. W. Cox & M. J. Gordon*, for Wyness and another, submitted a brief.

PIERCE, J. These are appeals from two decrees entered on January 7, 1935, by the Probate Court, the first decree granting a petition by Robert B. Wyness and Jean Douglas Wyness, his wife, for the adoption of Norma Jean Crowley, infant child of Timothy L. Crowley and his wife Lillian I. Crowley, and the second dismissing the petition of Lillian I. Crowley for an order for the return of said infant to her by Mr. and Mrs. Wyness.

Pursuant to G. L. (Ter. Ed.) c. 215, § 18, the trial judge appointed a stenographer to take the evidence. Upon entry of the decrees above referred to, and appealed from, the trial judge filed a report of material facts. These facts in substance and succinctly stated are as follows: In September, 1932, the appellant consulted her family physician, told him about certain physical disabilities and spoke about the possibility of her pregnancy. In October it was definitely decided that she was pregnant. She then told him "that, due to her social condition, her physical condition and her financial condition and her state of health . . . she did not feel that she could go through with it"; he advised her to go through with it in the natural way, and she then told him that she did not believe she was able or cared to keep the baby. The physician thereupon said he would find some foster parents who would be glad and happy to have a child and would take good care of it. Later it was agreed that the appellees should take the child after birth. The child was born May 5, 1933. The physician did not disclose the names of the parents to the Wynesses and they agreed that the identity of the parents be kept secret. On May 7, 1933, Mrs. Wyness was given the child at the hospital and it was taken to her home. On June 12, 1933, a petition for adoption and change of

name of the child was prepared by an attorney for the appellant and presented to the court. The petition was signed by the appellees, was dated June 6, 1933, and indorsed: "The undersigned, being the Mother of said child, hereby consents to the adoption, as above prayed for. LILLIAN I. CROWLEY." The judge insisted on an order of notice by publication on account of the disappearance of the father. In order to keep their promise of secrecy the Wynesses did not, at that time, insist on the order of notice. On August 16, 1934, the appellant filed a petition in court requesting that the child be returned to her. On August 13, 1934, the Wynesses requested that an order of notice issue on the adoption petition, and an order of notice did issue returnable September 12, 1934. On December 21, 1934, a full hearing was held in the matter of the adoption petition and the petition to return the child. It was agreed between the parties that "the Wynesses are in every way proper people, wholly able in every way to bring up the child properly." In accord with this agreement the trial judge added the agreement as a fact to his finding of facts then on file, and upon all the facts found "that the best interests of said child would be served if the Wynesses were allowed to adopt it; that they have had the child over one and one half years . . . [and that] they had moulded the manners of living to care for said child."

On the facts found the only question of law is whether or not the Probate Court had authority under G. L. (Ter. Ed.) c. 210, § 2, to enter a decree for adoption of a child, where that child was under the age of fourteen and where the mother of the child gave her consent on the petition but attempted to withdraw that consent before any hearing was had on the merits of said petition. It is not necessary to consider the fact that the father of the child sought to be adopted was described in the petition as "of parts unknown," the sufficiency of the notice that was given him under G. L. (Ter. Ed.) c. 210, § 4, or the fact that he did not appear after notice was given as ordered. G. L. (Ter. Ed.) c. 210, § 5. We assume the court had the right to

proceed after notice without his consent. It is to be noted that the provisions of G. L. (Ter. Ed.) c. 210, § 5A, as to the adoption of a child under the age of fourteen, are in alteration of the common law and must be strictly followed in all essential particulars. *Purinton* v. *Jamrock*, 195 Mass. 187, 197. G. L. (Ter. Ed.) c. 210, § 2, reads in part: "A decree for such adoption should not be made, except as hereinafter provided, without the written consent . . . of the lawful parents or surviving parent." It is plain the consent of the "lawful parents or surviving parent" is a fact which must exist when the consent receives the sanction of the court. G. L. (Ter. Ed.) c. 210, §§ 5A, 6. It does not follow that consent to the granting of a petition for adoption under G. L. (Ter. Ed.) c. 210 can be withdrawn before entry of the final decree where, as here, the written consent of the parent to the granting of the petition is submitted to the court upon the petition voluntarily with a full understanding of every fact necessary to such consent. To accede to the contention that such voluntary consent may be withdrawn would be equivalent to saying that parties may come to a court, deliberately give their assent to actions by the court in matters affecting their interests, and afterwards, at their will and pleasure, return to the court and undo what they did because on a future day they did not like it. Under the English practice in equity assent to a decree cannot be arbitrarily withdrawn although no decree has been entered thereon "unless some error is shewn which satisfies the Court that the consenting party ought not to be bound." *In re West Devon Great Consols Mine,* 38 Ch. D. 51, 54. *Holt* v. *Jesse,* 3 Ch. D. 177. Daniell, Chancery Practice (8th ed.) 645. *Burt* v. *Wigglesworth,* 117 Mass. 302, 306. We cannot follow *Herold* v. *Craig,* 59 W. Va. 353.

*Decrees affirmed.*